UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DATHAN JACKSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 4:18-CV-1243 RLW |
| GENERAL MOTORS, LLC, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This closed case is before the Court on Defendant General Motors, LLC's ("GM") Motion for Bill of Costs (ECF No. 135), Plaintiff Dathan Jackson's Opposition (ECF No. 136), and GM's Reply in Support (ECF No. 138). The matter is fully briefed and ready for decision. For the following reasons, the Court will order costs taxed in favor of GM as set forth below.

**I. Background**

This was an action for employment discrimination. Plaintiff filed this action claiming that his former employer, GM, terminated him for discriminatory reasons. Plaintiff's Second Amended Complaint (ECF No. 31) asserted federal and supplemental state law claims of disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") (Count I), and the Missouri Human Rights Act, §§ 213.010, et seq., Mo. Rev. Stat. (2017) ("MHRA") (Count III); retaliation in violation of the ADA (Count II) and MHRA (Count IV); discrimination based on Plaintiff's exercise of rights under the Missouri Worker's Compensation Law, § 287.780, Mo. Rev. Stat. (Count V); and race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (Count VI), and the MHRA (Count VII).

On June 25, 2020, the Court granted GM's Motion for Summary Judgment in all respects (ECF No. 133), entered Judgment in GM's favor, and assessed costs against Plaintiff. (ECF No. 134.)

## II. Defendant GM's Bill of Costs

GM filed a verified Bill of Costs (ECF No. 135) seeking the recovery of its taxable costs as a prevailing party. GM seeks total costs of $11,738.86, as follows:

| | | |
|---|---|---|
| • | Fees for transcripts | $11,312.43 |
| • | Fees and disbursement for printing | 426.43 |
| | TOTAL | $11,738.86 |

### A. Legal Standard

GM's request for its costs expended is governed by Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. The Court must carefully scrutinize the claimed costs and the support offered for them. Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 232-33, 235 (1964); Alexander v. Nat'l Farmers Org., 696 F.2d 1210, 1212 (8th Cir. 1982). "The party seeking to recover costs must fully establish the amount of compensable costs and expenses to which it is entitled." ABT Systems, LLC v. Emerson Elec. Co., 2016 WL 5470198, at *2 (E.D. Mo. Sept. 29, 2016) (cited case omitted). The taxation of costs under Rule 54(d) is permissive, but in the Eighth Circuit there is a strong presumption the prevailing party is entitled to an award of costs. Thompson v. Wal-Mart Stores, Inc., 472 F.3d 515, 517 (8th Cir. 2006). "As the losing party, [Plaintiff] bears the burden of overcoming the presumption that [GM] is entitled to recover all costs allowed by § 1920." Stanley v. Cottrell, Inc., 784 F.3d 454, 464 (8th Cir. 2015).

Allowable costs in most cases are limited to the categories set forth in 28 U.S.C. § 1920, and expenses not on the statutory list must be borne by the party incurring them. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987); Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002). Taxable costs under § 1920 include: (1) fees of the clerk and marshal; (2) fees for

2

printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters under 28 U.S.C. § 1828.

B. Discussion

The Court addresses Plaintiff's objections to GM's requested costs.

*1. Lack of Documentation*

Plaintiff objects that GM's Bill of Costs should be denied in total because GM did not provide documentation to support its requested costs, and instead relies exclusively on the sworn statement of its counsel. The latter statement is incorrect. In addition to the Declaration of its counsel Sarah Kuehnel (ECF No. 135-1), GM's verified Bill of Costs is accompanied by an Itemization of Costs (ECF No. 135-2) that lists the date, amount, vendor, and description of costs incurred, including invoice numbers or check numbers. In response to Plaintiff's objection, GM filed with its Reply copies of each invoice that supports the costs claimed in its Bill of Costs, Amended Itemization,[1] and the Kuehnel Declaration. (ECF No. 138-1, 138-2.) Plaintiff's objection based on lack of documentation is overruled.

*2. Fees for Transcripts Necessarily Obtained for Use in the Case*

GM seeks reimbursement for costs in the amount of $11,312.43 for court reporter/transcript fees for a number of stenographic and video depositions.

---

[1] GM filed the Amended Itemization (ECF No. 138-2) to show two copy expenses totaling $82.02 that it inadvertently omitted from the original Itemization. The Bill of Costs includes the $82.02 copy expense; thus, the total costs shown on the original Itemization did not match the Bill of Costs.

3

a. <u>Fees for Printed and Video Deposition Transcripts</u>

Plaintiff objects that GM seeks to recover costs for both stenographic and video depositions of Plaintiff and his personal physician, Dr. Mounir Shenouda, but fails to show that the duplicative video recordings were necessary for use in the case. Plaintiff states that GM did not use any video references or citations in its summary judgment briefing, and both Plaintiff and Dr. Shenouda could have been present to testify at trial.

GM responds by quoting the Court's statement made in the Memorandum and Order granting summary judgment: "Plaintiff has made an extraordinary effort in this case to create factual disputes with respect to each of his causes of action, even as to seemingly extraneous issues." (ECF No. 133 at 68.) GM then offers the following explanation as to why it believed the video deposition was needed for purposes of Plaintiff's credibility and impeachment at trial:

> Plaintiff's version of the facts was often inconsistent with the overwhelming evidence, inconsistent with GM's business records, and inconsistent with his own prior versions of events. While the written transcript of Plaintiff's deposition accurately reflected Plaintiff's spoken words, it did not reflect his mannerism, facial expression, combative nature, and the length of time it took him to formulate responses -- all of which would have been crucial for impeachment purposes if this case had gone to a jury trial. Because credibility was not at issue at the summary judgment stage, it was unnecessary for GM to provide the video deposition to the Court. However, use of the video deposition would have been critical to GM's defense and Plaintiff's impeachment at trial.

(ECF No. 138 at 2-3.) GM adds that Dr. Shenouda's video deposition was taken at Plaintiff's request, not GM's. Plaintiff has not controverted this statement.

The Eighth Circuit has held that "§ 1920 permits taxation of the costs associated with both printed and electronically recorded transcripts of the same deposition as long as each is 'necessarily obtained for use in a case.'" <u>Stanley</u>, 784 F.3d at 466-67. The Eighth Circuit stated there are many circumstances where both printed and electronically recorded transcripts of the

4

same deposition can satisfy the statute's "necessarily obtained for use in the case" requirement. Id. at 466.

The Court is extremely familiar with the record of this matter. In the context of this case, GM establishes to the Court's satisfaction that Plaintiff's stenographic and video depositions were both necessarily obtained for use in the case. The stenographic deposition was of significant importance on summary judgment. Although GM did not rely on Plaintiff's video deposition on summary judgment, this alone does not establish that the video deposition did not reasonably seem necessary for use in the case at the time it was taken. Plaintiff's credibility and potential impeachment were not at issue in GM's summary judgment motion, but certainly would have been addressed—and would likely have been of vital importance—at trial. GM's stated reason why the video recording of Plaintiff's deposition would be critical for credibility and impeachment purposes, had the case gone to trial, is consistent with the Court's knowledge of the record. In connection with summary judgment, the Court carefully read Plaintiff's deposition transcript, transcripts of interviews he had with GM representatives and of two appointments he had with Dr. Gupta, Plaintiff's Declaration, and his responses to discovery requests including requests for admissions.[2] With this degree of familiarity, the Court finds that Plaintiff's video deposition would have been important at trial with respect to Plaintiff's credibility and for impeachment purposes. GM has established to the Court's satisfaction that Plaintiff's video deposition, in addition to his stenographic deposition, was necessarily obtained for use in the case. This objection is overruled.

Plaintiff's objection to the taxing of costs for both the stenographic and video depositions of Dr. Shenouda is overruled, as the record reflects that Plaintiff requested the deposition also be

---

[2] See Memorandum and Order (ECF No. 133 at 5 & n.2).

taken on video. Cf. Buehrle v. City of O'Fallon, 2012 WL 579473, at *3 (E.D. Mo. Feb. 22, 2012) (plaintiff's objection to the taxing of costs for expedited deposition transcripts was meritless where the plaintiff requested the expedited transcripts and the fees were paid by the defendant).

          b.   Transcript of Plaintiff's Voice Recordings

Plaintiff objects to the taxing of GM's requested cost of $1,280.68 for certified transcripts of certain voice recordings taken by Plaintiff, for submission to the Court in support of its summary judgment motion. Plaintiff asserts that the transcripts were not necessarily obtained for use in the case because they were "purely investigatory," were made solely for discovery or investigative purposes, were made for the convenience of counsel, and GM only referenced one recording in its Memorandum in Support of its Motion for Summary Judgment.

GM responds that the transcripts it used to support its summary judgment motion were not made purely for the convenience of counsel. GM's counsel contacted the Court by email prior to filing for summary judgment, with a copy to Plaintiff's counsel, to inquire "how the Court prefers to receive voice recordings as a part of the record." (ECF No. 138-3 at 1.) The Court responded through its law clerk, "I would suggest you provide either a CD or flash drive with the recordings when you deliver the courtesy binder. Also, a written transcript of the recordings would be useful." (Id.) Based on the Court's guidance, GM had the voice recordings transcribed and provided the transcriptions to the Court as part of its summary judgment motion.

The transcripts were voice recordings Plaintiff made of (1) a crucial Disciplinary Interview Plaintiff had on April 9, 2018, with UAW Committeeman Chris Welling and GM Labor Relations Representative Rowena Rutledge, during which Plaintiff was informed that discipline for his absence from work on January 16, 2018, would be termination of employment at Step 6 of GM's Document 8 attendance policy, see Memorandum and Order (ECF No. 133 at 20-21, 29 n.25), and GM Exhibit 19; and (2) two interactions Plaintiff had with GM Plant Medical Director and former

Defendant Dr. Anil Gupta, recorded without Dr. Gupta's knowledge on March 1, 2018 (GM Exhibit 21), and June 21, 2018 (GM Exhibit 25). (Id. at 33, 39.) Plaintiff's race discrimination claims were based entirely on his allegations that Dr. Gupta treated Plaintiff unfairly based on his race, Black. (Id. at 39.) The Court relied on and discussed the transcripts of the voice recordings in the Memorandum and Order granting summary judgment.

GM states that the voice recordings are hard to hear and understand because there is significant shuffling and crackling, possibly due to Plaintiff having the recording device in a concealing pocket or bag, and therefore it may have been difficult and time consuming for the Court to find and understand the particular portions of the recordings cited in support of its summary judgment motion. GM explains that it had the transcriptions prepared by a certified court reporter as opposed to by a legal assistant, thus increasing the cost, "given Plaintiff's long history in this case of disputing the authenticity of records maintained by GM in the ordinance course of business, and his repeated denials of facts established by documentary evidence[.]" (ECF No. 138 at 4, n.3.)

The Court notes that the transcript of Plaintiff's recording of his Disciplinary Interview with Welling and Rutledge prepared by the certified court reporter is sixty-four pages long and includes frequent notations of "indiscernible," as to words or portions of conversation that the reporter was unable to hear and transcribe.[3] The transcripts of Plaintiff's interactions with Dr. Gupta are not as lengthy and contain fewer notations of "indiscernible," but also include words or portions of conversation the court reporter could not hear and transcribe. The Court required GM to submit a transcript of its voice recording evidence so that it could understand the evidence and

---

[3]See, e.g., GM Exhibit 19 at 2, 4, 6, 8, 9, 10, 11, 12, 13, and continuing thereafter in similar fashion.

7

so the record before it would be clear.[4] Otherwise, the parties would not have known what the Court was able to hear and understand from the unclear voice recordings, and whether or not the Court's understanding of what it heard was correct. Thus, they would have had no opportunity to point out and correct any misunderstanding by the Court, which could have been prejudicial to either party.

For these reasons, Plaintiff's objections that the transcripts were purely investigatory, were made solely for discovery or investigative purposes, and were made for the convenience of counsel, are without merit. In the exercise of its discretion, the Court finds it is appropriate to tax costs in favor of GM for the transcripts of voice recordings made by Plaintiff, because the Court required their preparation, the transcripts were necessary for the Court to understand relevant evidence that was created by Plaintiff, and the transcripts were necessary for purposes of providing clarity in the record. Cf. Dindinger v. Allsteel, Inc., 853 F.3d 414, 431 (8th Cir. 2017) (district court did not abuse its discretion by awarding costs for a RealTime transcript feed under 28 U.S.C. § 1920(2), where the case raised complex issues and the district court required counsel to research issues of law and prepare additional filings during the trial).

*3. Fees and Disbursements for Printing*

Finally, Plaintiff objects that GM cannot recover taxable costs in the amount of $426.43 for fees and disbursements for printing because it has not adequately documented or itemized its requested costs. Yaris v. Special Sch. Dist. of St. Louis County, 604 F. Supp. 914, 915 (E.D. Mo. 1985) (costs requested for reproduction must be "documented or itemized in such a way that this Court can meaningfully evaluate [a] request.").

---

[4]Although the Court's former law clerk stated in his response to GM's email inquiry that transcripts of the voice recordings would be "useful," the Court's intent was to require GM to provide a transcription of any voice recording submitted in connection with its summary judgment motion.

GM responds that the printing costs are itemized in the Itemization and Amended Itemization it filed with the Court, copies of all of the records for which GM seeks recovery of its costs were produced to Plaintiff during the litigation, and the invoices supporting copy costs associated with the records are attached to its Reply as Exhibit A. (ECF No. 138-1, 138-2.)

Plaintiff's objection is meritless. GM has provided both itemization and documentation for its requested copy costs. Each of the seven items at issue are clearly identified Missouri Human Rights Commission and medical records concerning Plaintiff held by third parties. GM was required to pay the third parties to obtain Plaintiff's records and has provided copies of the relevant invoices. Thus, the Court can determine that the records were necessarily obtained for use in the case. The case Plaintiff cites is inapposite, as it concerned a prevailing party whose request for copying costs was supported only by the cost per page and number of pages copied. Finan v. Good Earth Tools, Inc., 2008 WL 1805639, at *11 (E.D. Mo. Apr. 12, 2008), aff'd, 565 F.3d 1076 (8th Cir. 2009) (information did not permit the Court to "evaluate whether the copies were necessarily obtained for use in this case and the expense was reasonable.").

C. Conclusion

For the foregoing reasons, the Court will order GM's Bill of Costs taxed as requested. Accordingly,

**IT IS HEREBY ORDERED** that Defendant General Motors, LLC's Motion for Bill of Costs is **GRANTED**; costs will be taxed in its favor in the amount of Eleven Thousand Seven Hundred Thirty-Eight Dollars and Eighty-Six Cents ($11,738.86). (ECF No. 135)

**IT IS FURTHER ORDERED** that the Clerk of the Court shall tax costs in favor of Defendant General Motors, LLC, and against Plaintiff Dathan Jackson, in the amount of Eleven Thousand Seven Hundred Thirty-Eight Dollars and Eighty-Six Cents ($11,738.86).

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 13th day of August, 2020.